CROSBY (MASON v.). See Cases Nos. 9,234–9,236.

---

## Case No. 3,424a.

### CROSBY v. The ORIENTAL.

[19 Betts, D. C. MS. 76.]

District Court, S. D. New York. Sept. 15, 1851.

MARITIME LIENS—UNDER STATE STATUTES — PRIORITY.

[A state statute (2 Rev. St. N. Y. p. 405, § 1, cl. 3), giving a mortgage on a vessel precedence over all other liens, does not avail to give it precedence over maritime liens subsequently arising, in preparing the vessel for sea, with the knowledge and consent of the mortgagee.]

[In admiralty. Libels by Seth Crosby and others against the brig Oriental, Alexander M. Andrews, claimant, to enforce certain maritime liens.]

BETTS, District Judge. Numerous parties having maritime liens in this vessel have procured her condemnation and sale by decree of court to satisfy those demands. Alexander M. Andrews intervened and contested the several actions, but the cases were defaulted at term, and orders of reference to a commissioner to ascertain and report the amounts due the respective libellants were entered. A stipulation for consolidating the cases, and having the decision in one determine the right of the claimants in all the others, was entered into between the proctors. and it was also agreed that the points in controversy between the libellants and claimant should be tried and decided on a petition to the court to determine the right of priority of the respective parties to the fund in court. The liability of the vessel to the various libellants accrued in June or July, whilst she was in possession of Robert Taylor, as owner and master, and the suits against her thereon were instituted in July. Taylor is an alien, and incapable, in that capacity, to take title to the vessel. She was purchased by and for him, and the title given in the name of Robert Roulston, who immediately thereupon, May 14, 1850, mortgaged her to Andrews, the claimant, for $2,000, to secure the purchase money, which was furnished by him in his notes payable in October thereafter. The mortgage was registered the next day, and the mortgagee demanded payment of the money secured to be paid by it, on the 8th of July, 1850. The first libel was filed July 6, and others the 9th, and followed by others on different days

of the same month. On the hearing, the mortgagee insists he is entitled to a priority of satisfaction out of the funds in court, his mortgage being registered before the debts were incurred to the several libellants.

First, in respect to the demands for materials and supplies furnished the vessel for her outfit on the voyage contemplated, they have a precedence given them over other debts owing by the vessel, by the statute of this state which gives the lien now sought to be enforced. The act declares "such debt shall be a lien upon the ship or vessel, and shall be preferred to all other liens thereon, except mariners' wages." 2 Rev. St. p. 405, § 1, cl. 3. The mortgage was taken subject to this provision of the law, and the claim under it, if unexceptionable, must be postponed to the demands of that class of creditors and to the petition of the seamen for wages. Several of the libellants entered on board the vessel here in the capacity of seamen, to work their passage to California, and, in addition to their services as seamen, advanced and paid for the privilege a sum of money to the master or owner. The voyage was broken up by the arrest and sale of the vessel, and those parties sue for the monies advanced, and also for damages for the loss of the voyage. The commissioner reports various amounts due them in that behalf. No exception is taken to the report, and the only question raised is whether the claimant has not, by virtue of his mortgage, a prior right to the fund in court. If the mortgage is regarded equivalent to an hypothecation of the vessel to Andrews, with actual possession, the mortgagee could not thus hold her exempt from liability for maritime liens subsequently accruing.

The only question would be whether he did not become also personally responsible for such debts. The vessel is chargeable under the maritime law for the fulfilment of the contract of her master, or ship's husband, in respect to freight, the transportation and safe delivery of cargo, and other matters incident to her service and employment in her legitimate business, and those liabilities take priority over antecedent obligations, even by way of bottomry, when first presented. Abb. Shipp. 161, note 1, 344; Domat, lib. 3, tit. 1, § 5; Marshall v. Bazin [Case No. 9,-125]; The Pacific v. Cleveland [Id. 10,643]; Daveis, 29 [The Calisto, Case No. 2,316]; Daveis, 71 [Davis v. Child, Case No. 3,628]; Daveis, 199 [Hull of a New Ship, Case No. 6,859].

If there may be room for question as to the effect of conflicting claims between bottomry creditors and posterior creditors having only ordinary maritime liens on the vessel, a mortgagee has no pretence to priority of privilege over the latter. His claim is not of a maritime character. If he does not take the vessel into possession and keep her from employment at sea, he must be held to acquiesce in her being subjected to all the responsibilities of vessels engaged in navigation and trade. It could operate as a fraud to allow her to be repaired, fitted out, supplied and freighted for sea, if advances to these ends accrued to the benefit of the mortgagee. If a vessel can be treated as a mere chattel, and subjected to the law applicable to chattels, it can be only so in her home port, where she is expressly excluded by the pawnee or mortgagee from being employed in navigation. When a mortgagee allows a vessel to undertake a voyage at sea, he must be held to place her in all respects in relation to maritime obligations incurred by her, in the same situation as if she was fitted out directly by him in the character of mortgagee in possession, and he cannot be permitted in equity and good conscience to set up his antecedent contract encumbrance on her, to the prejudice of maritime creditors thus acquiring liens on the vessel herself.

In my opinion, the demand of the mortgagee in this case cannot supersede or displace the claims of the prosecuting creditors, and they are entitled to the satisfaction of their decrees out of the fund in court, together with costs.